# Stanford *v.* St. Louis & San Francisco R. R. Co.

## *Crossing Accident.*

(Decided May 24, 1909.   Rehearing denied June 30, 1909.—50 South. 110.)

1. *Negligence; Last Clear Chance.*—The doctrine of subsequent negligence or last clear chance is recognized in Alabama.

2. *Railroads; crossing Accident; Instruction.*—An instruction, in an action for the death of one killed in a railroad crossing accident, that if the crossing had been closed, the verdict must be for the defendant, unless the employe who caused the train to be set in motion knew that his conduct would probably result in injury, and that there could be no verdict unless the servants in charge of the train intentionally or wantonly or willfully caused it to be backed against the decedent, is improper as ignoring the doctrine of last clear chance, which some of the evidence tended to establish.

APPEAL from Lamar Circuit Court.

Heard before Hon. S. H. SPROTT.

Action by Letitia E. Stanford as administratrix against the St. L. & S. F. R. R. Co., for damages for causing the death of her intestate in a railroad crossing accident.   Judgment for defendant and plaintiff appeals.   Reversed and remanded.

WALTER NESMITH and JOHN S. STONE, for appellant. —The court erred in giving charge 1.—*Brown v. L. & N.*, 121 Ala.   The court erred in giving charge 6.—*Eiland v. The State*, 52 Ala. 322; 92 Ala. 285; 115 Ala. 13; 127 Ala. 37.   The court erred in giving charge 35.—*Brown v. L. & N., supra.*   The court erred in giving charge C.— Sec. 3443, Code 1896.   Counsel discuss various other charges given at the request of appellee, but cite no authority in support of their contention.

BANKHEAD & BANKHEAD, for appellee.—There was no judgment overruling demurrers to the rejoinder.—*Jasper Merc. Co. v. O'Rear,* 112 Ala. 247; *Cartledge v. Sloan,* 124 Ala. 596; *Tinney v. C. of Ga.,* 129 Ala. 523; *Crawford v. Crawford,* 119 Ala. 34. The assignment of errors based upon the giving of numerous written charges cannot be considered since it does not appear that the presiding judge wrote "given" thereon, and signed his name thereto.—Sec. 5364, Code 1907; *Barnwell v. Murrell,* 108 Ala. 366; *Ala. Const. Co. v. Wagnon Bros.,* 137 Ala. 288; *Little v. The State,* 58 Ala. 277. Where the affirmative charge can be given on the evidence for the successful party, the giving of other charges was error without injury.—*Bienville W. Co. v. City of Mobile,* 125 Ala. 178; *Johnson v. Philadelphia Co.,* 129 Ala. 515. That the defendant under the evidence in this case was entitled to the affirmative charge, see the following cass.—*M. & C. R. R. Co. v. Copeland,* 61 Ala. 376; 66 Am. St. Rep. 39; 32 Ky. L. Rep. 69; 30 Ky. L. Rep. 1208; 46 Fed. 344; 101 Md. 50; 112 Ind. 592; 86 Ga. 192.

MAYFIELD, J.—Plaintiff's intestate was killed in the town of Sulligent by defendant's freight train at about 1 o'clock in the afternoon of December 16, 1906. The freight train was standing upon a side track at Sulligent just prior to the accident, awaiting the arrival of the passenger train due at that hour. The freight train as it thus stood upon the side track crossed one or more of the public thoroughfares of the town, along which people were wont to pass in considerable numbers, especially to and from defendant's depot upon the arrival and departure of defendant's passenger trains; and, for the purpose of not impeding the travel, the cars composing the train were uncoupled, so that the highway could be opened for travel over and along same

while the train was thus waiting. Just as the passenger train whistled for the station of Sulligent, the conductor of the freight train signaled the engineer to couple up the train so that it would be ready to move out as soon as the passenger train had arrived or passed. As the train was thus being coupled up the intestate was in some manner caught by the moving cars and crushed to death.

The evidence was in conflict as to whether deceased was passing along one of these highways and attempting to go through the opening made for that purpose between two of the cars, and was thus caught between the two cars as they were being moved together to be coupled, or whether the passageway had been closed by the cars being coupled before he reached the line of cars, and he attempted to climb over or crawl under the couplings, or whether he was trying to crawl under one of the cars, midway between the couplings, when he was caught and crushed. The evidence was also in dispute as to whether any of the train crew in charge of the movements of the train consented or signaled to intestate that he could cross the track or the cars at the time and in the manner he attempted so to do.

A great many witnesses were present at the time of the accident, but only a few seem to have been loking at the deceased at the exact time of his attempt to cross, or to know the exact manner in which he attempted to cross —whether he was attempting to cross through the opening between the cars, or over or under the coupling, or under the car, midway between the couplings. The witnesses who profess to have observed the accident differ one from another as to one or more of these details, and also as to whether deceased signaled the train crew for permission to cross, and as to whether any member of the crew signaled consent, and, if so, which member, the

[Stanford v. St. Louis & San Francisco R. R. Co.]

flagman, the conductor, or the engineer. For the purpose of this appeal, and such purpose only—that is, showing the correctness of the principles of law to be announced in this opinion—we will concede that the weight of the evidence supported the verdict of the jury finding for the defendant, and that there was no liability.

There was, however, evidence which would authorize the jury to infer that, if the plaintiff's intestate was guilty of negligence, such negligence preceded that of the defendant, if such there was, and it was open to the jury to infer from some of the evidence that there was, which proximately caused the injury, and that plaintiff's intestate's negligence, if such there was, did not concur with that of the defendant's which caused the injury, but preceded it, and therefore did not proximately contribute to his death. Some of the evidence would also justify the inference that the plaintiff's intestate was induced to attempt to cross the track or train by the defendant's agents before they were guilty of any negligence, which might relieve the intestate from the onus of being a trespasser at the time of the accident, and that the negligence in consequence of which he was injured was subsequent to that of plaintiff's intestate, and that, therefore, he had no chance to avoid the negligence of defendant, while the defendant did have the opportunity to avoid injuring intestate, after his negligence, which may have been induced by defendant, and that, if the defendant had exercised reasonable care after knowing of intestate's peril and negligence, it could and would have thereby avoided injuring him. Some of the evidence makes a clear and typical case for the application of the doctrine of "subsequent negligence" or "last clear chance." The rule or doctrine, first announced in England, has been adopted and is now well recognized in this state.—*Hansel's Case*, 53 Ala. 70;

*Tanner's Case,* 60 Ala. 621; *Cook's Case,* 67 Ala. 533; *Letcher's Case,* 69 Ala. 106, 44 Am. Rep. 505; *Frazer's Case,* 81 Ala. 185, 1 South. 85; notes in 60 Am. Rep. 145; 11 L. R. A. 385; 25 L. R. A. 289; 55 L. R. A. 426; 69 L. R. A. 549. In these cases, supra, many on the subject of this and other states, as well as federal and English cases in point, are collected and discussed. See, also, more frequent cases of this state—(*Brantley's Case,* 132 Ala. 655, 32 South. 300; *Young's Case,* 153 Ala. 232, 45 South. 238, 16 L. R. A. (N. S.) 301), in which the same doctrine is announced.

The court, at the request of the defendant in writing, gave the jury a great number of charges, some of which ignored this phase of the evidence; and virtually charged the jury that plaintiff could not recover in the case if they believed from the evidence that the space between the cars had been closed when deceased attempted to cross the railroad track unless they further believed that defendant was guilty of wanton negligence or willful injury—wholly ignoring or disregarding the doctrine of subsequent negligence or "last clear chance," which some of the evidence tended to establish. Similar charges were held bad in some of the cases of this state, cited above, under like evidence, and for the very reasons herein assigned. Given charges 1 and 34 were typical of this infirmity. These charges were as follows:

"(1) If you believe from the evidence that the crossing had been closed before Clyde entered on the track, you must find for the defendant, unless you are reasonably satisfied that the employe who caused the train to be set in motion was conscious from his knowledge of existing circumstances and conditions that his conduct would likely or probably result in injury, or that he had a design, purpose, or intent to do wrong and inflict the injury."

[Martin v. Union Springs & Northern Railway Co.]

"(34)   The court charges the jury that if they believe from the evidence that the space between the cars and the crossing had been closed before Clyde attempted to cross the track that they cannot find for the plaintiff, unless they further believe from the evidence that the agents, servants, or employes in charge or control of the movements of the train wantonly, willfully, or intentionally backed, or caused or allowed the train to be backed against Clyde."

It is unnecessary to pass upon the other assignments of error, as the same questions will probably not arise upon another trial.   However we may say that in other respects the rulings of the trial court seem to have been correct.

For the errors indicated, the judgment of the trial court must be reversed and the cause remanded.

Reversed and remanded.

SIMPSON, ANDERSON, DENSON, MCCLELLAN, and SAYRE, JJ., concur.